UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-103 (NEB/SGE)

UNITED STATES OF AMERICA,

Plaintiff,

v.

LAMAR JAVIS BURGESS
A/K/A JAMES WELLS,

Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and LaMar Javis Burgess ("Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota (hereinafter "the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charge**. The Defendant agrees to plead guilty to Counts 1 and 8 of the Indictment, which charges the Defendant with Conspiracy to File False Claims, in violation of 18 U.S.C. § 286, and Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). The Defendant fully understands the nature and elements of the crimes with which he has been charged.

Upon imposition of sentence, if there are remaining counts, the United States agrees to move to dismiss those remaining charges against the Defendant contained in the Indictment. If the Defendant pleads guilty to Counts 1 and 8 and otherwise complies with all provisions of this agreement, the United States will not pursue additional charges against him based on information known at the time of his plea by personnel investigating this matter.

2. **Factual Basis**. The Defendant is pleading guilty because he is in fact guilty of Counts 1 and 8 of the Indictment. In pleading guilty, the Defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

Beginning in or about June 2022 through at least October 2024, in the State and District of Minnesota and elsewhere, the Defendant conspired with his son, LaMar Dazjar Burgess (LaMar Dazjar Burgess), and other unindicted co-conspirators, to defraud the Internal Revenue Service, an agency of the United States Department of the Treasury, by submitting false, fictitious, and fraudulent claims for income tax refunds.

The Defendant along with other unindicted co-conspirators devised a scheme to obtain money from the United States government by filing false tax returns claiming refunds to which the individuals in whose names the returns

were filed were not entitled. In furtherance of the scheme, Defendant searched for and obtained videos, directions, and instruction manuals, including a guide titled, "TurboTax Sauce The 'Self-Employed' Way," to educate himself on preparing and filing false Forms 1040.

Beginning in or about June 2022, the Defendant began soliciting potential co-conspirators, including LaMar Dazjar Burgess, to recruit clients for Defendant and other unindicted co-conspirators or to directly provide the Defendant with information needed to prepare and file false tax returns for others. This solicitation lasted until at least October 2024 when the investigation went overt.

The Defendant, LaMar Dazjar Burgess, and other unindicted co-conspirators solicited others to provide them with their names, addresses, social security numbers, photographic identification, and bank account information to prepare and file false Forms 1040 and fraudulently claim tax refunds to which the taxpayers were not entitled.

Defendant told LaMar Dazjar Burgess and other unindicted co-conspirators that for a fee of $10,000, Defendant could prepare and file fraudulent federal income tax returns claiming approximately $30,000 per refund and that the $10,000 fee would be shared between the Defendant and the co-conspirator. Defendant told LaMar Dazjar Burgess and other unindicted co-conspirators that Defendant needed a full name, address, email, social

security number, and bank routing and account numbers of a taxpayer in order to prepare and file the false tax return.

For tax year 2021, Defendant and LaMar Dazjar Burges knowingly completed and filed, or caused to be completed and filed, false Forms 1040 for himself and others claiming refundable sick and family leave tax credits available to taxpayers who were unable to perform services as a self-employed individual because of certain coronavirus-related care they required or provided to another, to which the taxpayers were not entitled. The Defendant and LaMar Dazjar Burgess knew the taxpayers were not entitled to the refund amounts claimed.

In or about July 2022, LaMar Dazjar Burgess provided the Defendant the name, address, email, social security number, and bank routing and account numbers for himself and A.L.I.

On June 25, 2022, Defendant personally filed a fraudulent federal income tax return in his own name, falsely claiming a refund $33,520 using refundable sick and family leave tax credits. Defendant was aware of the high probability that he was not eligible for this refund, and deliberately chose not to inquire, instead he prepared and filed a false tax return bearing his own name anyway.

On June 30, 2022, Defendant filed or caused to be filed a fraudulent federal income tax return on LaMar Dazjar Burgess' behalf, falsely claiming a

$32,478 refund. On July 18, 2022, Defendant filed or caused to be filed a fraudulent federal income tax return on A.L.I.'s behalf, falsely claiming a ~~$31,771 refund. The Defendant knew these claims were false and that he and A.L.I. were not entitled to any such credit.~~

The Defendant filed or caused to be filed at least 194 false, fictitious, and fraudulent 2021 income tax returns, claiming at least $6.3 million in refunds.

For tax year 2022, the Defendant and LaMar Dazjar Burgess knowingly completed and filed, or caused to be completed and filed, false tax returns for LaMar Dazjar Burgeess and others claiming refundable tax credits for federal tax paid on fuels for off-highway business uses or for use on a farm or for farming purposes. The Defendant and LaMar Dazjar Burgess knew the taxpayers were not entitled to the amounts claimed.

In or about June and July 2023, Defendant again proposed filing fraudulent tax returns on LaMar Dazjar Burgess' behalf and on the behalf of others, and LaMar Dazjar Burgess again agreed.

In or about June and July 2023, LaMar Dazjar Burgess provided the ~~Defendant the name, address, email, social security number, and bank routing and account numbers for himself, A.L.I., C.L.S., J.R.P., and others so that Defendant could prepare and file fraudulent federal income tax returns.~~

~~On June 22, 2023, Defendant filed or caused to be filed a fraudulent federal income tax return on A.L.I.'s behalf, falsely claiming a $27,107 refund.~~

On June 23, 2023, Defendant filed or caused to be filed a fraudulent federal income tax return on C.L.S.'s behalf, falsely claiming a $27,150 refund. On July 22, 2023, Defendant filed or caused to be filed a fraudulent federal income tax return on J.R.P.'s behalf, falsely claiming a $28,349 refund. On July 24, 2023, Defendant filed or caused to be filed a fraudulent federal income tax return on LaMar Dazjar Burgess' behalf, falsely claiming a $29,642 refund. The Defendant knew these claims were false and that he and the others were not entitled to any such credit.

The Defendant filed or caused to be filed at least 98 false, fictitious, and fraudulent 2022 income tax returns, claiming at least $2.7 million in refunds.

The scheme continued to at least October 2024, when the investigation went overt via federal search warrant and interview of the Defendant. Between approximately June 2024 and October 2024, the Defendant filed or caused to be filed at least eight false, fictitious, and fraudulent 2023 income tax returns claiming at least $236,000 in refunds.

In total, the Defendant and his co-conspirators prepared and / or filed at least 300 false, fictitious, and fraudulent income tax returns claiming at least $9.2 million in refunds.

On or about October 28, 2024, law enforcement executed a search warrant at the Defendant's residence in Golden Valley, Minnesota. In the residence, agents found documents and electronic devices belonging to the

Defendant. Some of the documents found included Minnesota drivers licenses with the Defendant's picture on them. In the master bedroom closet, agents found a Glock 9mm semi-automatic handgun bearing serial number ABRU052. The handgun contained a loaded fifteen round magazine. An empty magazine, an extended high-capacity magazine, and a high-capacity drum magazine, were also found on the closet shelves, and loose ammunition rounds were located in a bag inside the closet. The Defendant's DNA was found on the handgun. The handgun is a stolen firearm, belonging to a man from Forest Lake, Minnesota.

Law enforcement inspected the handgun and determined that it was manufactured in Georgia and thus the firearm was transported across a state line.

At the time of the search warrant, the Defendant was a felon prohibited from possessing firearms and ammunition, by virtue of his prior state and federal convictions for being a felon in possession of a firearm and felony assault on law enforcement. The Defendant was aware that he was prohibited at the time of the search warrant.

With respect to Count 8, the Defendant stipulates and agrees that on or about October 28, 2024, he had actually been previously convicted of a crime punishable by imprisonment for more than one year; he knew he had been convicted of a crime punishable by imprisonment for more than one year; he

Constructively possessed in that he knew the firearm was in the closet LB NJ M

knowingly possessed a firearm despite being ineligible to possess a firearm, that is a stolen Glock 9mm handgun bearing serial number ABRU052 and a high capacity magazine; and at some point during or before the defendant's possession of the firearm, the firearm was transported across a state line.

3. **Venue Waiver**. The Defendant knowingly, willingly, and voluntarily waives any challenge to the venue of this prosecution in District of Minnesota.

4. **Waiver of Pretrial Motions**. The Defendant understands and agrees that the Defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the Defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The Defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

5. **Waiver of Constitutional Trial Rights.** The Defendant understands that he has the right to go to trial. At trial, the Defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled

self-incrimination. The Defendant understands that he has the right to an attorney at every stage of these proceedings and attorneys have been appointed to represent him. The Defendant understands that he has the right to persist in a plea of not guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The Defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the Defendant guilty without a trial.

6. **Additional Consequences**. The Defendant understands that as a result of this conviction, the Defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the Defendant is not a United States citizen, as a result of a plea of guilty, the Defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The Defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

7. **Statutory Penalties**. The Defendant understands that Count 1 of the Indictment, charging Conspiracy to File False Claims in violation of

18 U.S.C. § 286 is a felony offense that carries the following statutory penalties:

a. a maximum of 10 years in prison;

b. a maximum supervised release term 3 years;

c. a maximum fine of $250,000, or twice the gross gain or loss caused by the offense, whichever is greatest;

d. restitution to victims as agreed to by the parties in this agreement; and

e. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

The Defendant understands that Count 8 of the Indictment, charging Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) is a felony offense that carries the following statutory penalties:

a. a maximum of 15 years in prison;

b. a maximum supervised release term 3 years;

c. a maximum fine of $250,000; and

d. a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

8. **Guidelines Calculations.** The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States

Sentencing Guidelines in determining the appropriate sentence. The parties agree that Section 2T of the Sentencing Guidelines apply to Count 1 of the Indictment. The parties stipulate to the following guidelines calculations:

a. Count 1: Conspiracy to File False Claims

i) Base Offense Level. The parties agree that the base offense level is 24. U.S.S.G. §§ 2T1.4(A)(1) & 2T4.1(J)

ii) Specific Offense Characteristics. The parties agree that the offense level should be increased by 2 levels because the offense involved fraud or theft involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with a declaration of a major disaster or an emergency. U.S.S.G. § 2B1.1(b).

iii) Total Offense Level: 26

b. Count 8: Felon-in-Possession of a Firearm

i) Base Offense Level. The parties agree that the base offense level is 20. The Defendant committed the instant offense after sustaining one felony conviction of a crime of violent, that is, felony assault of a peace officer in the State of Minnesota. U.S.S.G. §§ 2K2.1(a)(4)(A).

ii) Specific Offense Characteristics. The parties agree that the offense level should be increased by 2 levels because the offense involved a high-capacity magazine. U.S.S.G. § K2.1(a)(4)(a). The parties agree that the offense level should be increased by 2 levels because the offense involved a stolen firearm. U.S.S.G. § K2.1(a)(4)(a).

iii) Total Offense Level: 24

c. Chapter 3 Adjustments.

i) Grouping and Combined Offense Level: The parties agree there are two Groups of offenses: Count 1 and Count 8. The offense level for Group 1 / Count 1 is 26. The offense level for Group 2 / Count 8 is 24. There is one unit for the group of the highest offense level, that is, Count 1. There is one additional unit for each Group that is equally serious or from 1 to 4 levels less serious. Thus there is one additional unit for Group 2 / Count 8. There are two units, thus the parties agree that the offense level should be increased by 2 levels. U.S.S.G. § 3D1.4.

ii) Acceptance of Responsibility. The United States agrees to recommend that the Defendant receive a 2-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the Defendant has timely notified the United States of the Defendant's intention to enter a plea of guilty, the United States agrees to recommend that the Defendant receive an additional 1-level reduction pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the Defendant understands and agrees that the United States' recommendations are conditioned upon the following: (1) the Defendant testifies truthfully during the change of plea and sentencing hearings; (2) the Defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the Defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing. Nothing in this agreement limits the right of the United States, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the Defendant engage in any conduct inconsistent with acceptance of responsibility.

iii) By taking the most serious offense level of Group 1 which is 26 levels, adding 2 levels for Grouping, and deducting 3 levels for timely acceptance of responsibility, the parties agree the ultimate Offense Level is 25 levels. The parties agree that no other Chapter 3 adjustments apply.

d. Criminal History Category. The parties believe that, at the time of sentencing, the Defendant will fall into Criminal History Category III. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status will be determined by the

Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The Defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the Defendant will be sentenced based on his true criminal history category, and the parties will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

e. Guidelines Range. If the adjusted offense level is 25, and the criminal history category is III, the Sentencing Guidelines range is **70 to 87 months of imprisonment**.

f. Fine Range. If the adjusted offense level is 25, the Sentencing Guidelines fine range is $20,000 to $200,000. U.S.S.G. § 5E1.2(c).

g. Supervised Release. The Sentencing Guidelines' term of supervised release is not more than three years. U.S.S.G. § 5D1.2.

9. **Revocation of Supervised Release**. The Defendant understands that if the Defendant were to violate any supervised release condition while on supervised release, the Court could revoke the Defendant's supervised release, and the Defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The Defendant also understands that as part of any revocation, the Court may include a requirement that the Defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

10. **Agreements as to Sentencing Recommendation.** At the time of sentencing, the government agrees to recommend that the defendant receive a sentence of **no more than 62 Months Imprisonment**. The parties reserve the right to make motions for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

11. **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the Defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

12. **Agreements as to Sentencing Recommendation**. At the time of sentencing, the government agrees to recommend that the defendant receive a sentence of **no more than 62 Months Imprisonment**. The parties reserve the right to make motions for departures from the applicable Guidelines range pursuant to 18 U.S.C. § 3553(a), to oppose any such motion made by the opposing party, and to argue for a sentence outside the applicable Guidelines range. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea.

13. **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the Defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The Defendant agrees to pay the special assessment.

14. **Restitution Agreement**. The Defendant understands and agrees that both the Mandatory Victims Restitution Act and the Victim and Witness Protection Act of 1982, 18 U.S.C. §§ 3663A and 18 U.S.C. § 3663, apply. With respect to the charge of conviction, the Court is required to order the Defendant to make restitution to the victim of the Defendant's crime – the Internal Revenue Service. With respect to Count 1, the Defendant agrees that restitution is owed and agrees that the Court shall order the Defendant to pay restitution in the amount of $2,221,826.48.

The Defendant agrees that he owes restitution in the amount of $2,221,826.48 and agrees that the Court will order him to pay restitution to the Internal Revenue Service and agrees that the total amount of restitution reflected in this agreement results from the Defendant's fraudulent conduct.

The Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The Internal Revenue Service will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). The Defendant does not have the right to challenge the amount of this restitution-based assessment. Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to that schedule will preclude the Internal Revenue Service from immediately collecting the full amount of the restitution-based assessment.

The Defendant is entitled to receive credit for restitution paid pursuant to this plea agreement against those assessed civil tax liabilities due and owing for the same periods for which restitution was ordered. The Defendant understands and agrees that the plea agreement does not resolve the

Defendant's civil tax liabilities, that the Internal Revenue Service may seek additional taxes, interest and penalties from the Defendant relating to the conduct covered by this plea agreement and for conduct relating to another time period, and that satisfaction of the restitution debt does not settle, satisfy, or compromise the Defendant's obligation to pay any remaining civil tax liability. The Defendant authorizes release of information to the Internal Revenue Service for purposes of making the civil tax and restitution-based assessments.

The Defendant understands that he is not entitled to credit with the Internal Revenue Service for any payment until the payment is received by the Internal Revenue Service. If full payment cannot be made immediately, the Defendant agrees to make a complete and accurate financial disclosure to the Internal Revenue Service on forms prescribed by the Internal Revenue Service (including, but not limited to, IRS Form 433-A and Form 433-B, as appropriate), and to disclose to the Internal Revenue Service any and all additional financial information and financial statements provided to the probation office. The Defendant also agrees to provide the above-described information to the probation office. If the Defendant makes a payment of the restitution agreed to prior to sentencing, the payment will be applied as a credit against the restitution ordered.

The Defendant agrees to send all payments made pursuant to the District Court's restitution order to the Clerk of Court at the following address:

Diana E. Murphy United States Courthouse
300 South Fourth Street - Suite 202
Minneapolis, MN 55415

With each payment to the Clerk of the Court made pursuant to the District Court's restitution order, the Defendant will provide the following information:

A. Defendant's name and Social Security number;

B. The District Court and the docket number assigned to this case;

C. The tax years for which restitution has been ordered; and

D. A statement that the payment is being submitted pursuant to the District Court's restitution order. The Defendant agrees to include a request that the Clerk of the Court send the information, along with the Defendant's payments, to the IRS address below:

IRS - RACS Attn:
Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

Defendant also agrees to send a notice of any payments made pursuant to this agreement, including the information listed in the previous paragraph, to the IRS at the same address.

The Defendant also agrees to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), a Glock 9mm handgun bearing serial number ABRU052 and all ammunition and accessories seized therewith. The Defendant agrees that the United States or any local law enforcement entity may, at its option, forfeit such property through civil, criminal, or administrative proceedings, waives any deadline or statue of limitations for the initiation of any such proceedings, withdraws any petition for remission or mitigation of forfeiture for such property, and abandons any interest he may have in that property. The Defendant waives all statutory and constitutional defenses to the forfeiture and consents to the destruction of the firearms, ammunition, and accessories or the return of the firearm to its lawful owner.

15. **Disclosure of Assets.** The Defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest, or over which the Defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the Defendant. The Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The Defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The Defendant further agrees to execute any releases

that may be necessary for the United States to obtain information concerning the Defendant's assets and expressly authorizes the United States to obtain a credit report on the Defendant to evaluate the Defendant's ability to satisfy financial obligations imposed by the Court. If requested by the United States, the Defendant agrees to submit to one or more asset interviews or depositions under oath.

16. **Waivers of Appeal and Collateral Attack**. The Defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the Defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by Defendant of the substantive reasonableness of a term of imprisonment above the top of the Guidelines range, and an appeal by the United States of the substantive reasonableness of a term of imprisonment below the bottom of the Guidelines range.

The Defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal

principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the Defendant's conduct non-criminal or that render the sentence imposed illegal.

The Defendant has discussed these rights with the Defendant's attorney. The Defendant understands the rights being waived, and the Defendant waives these rights knowingly, intelligently, and voluntarily.

17. **FOIA Requests.** The Defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18. **Complete Agreement**. This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the Defendant. By signing this plea agreement, the Defendant acknowledges: (a) that the Defendant has read the entire agreement and has reviewed every part of it with the Defendant's counsel; (b) that the Defendant fully understands this plea agreement; (c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the Defendant is satisfied

with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the Defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the Defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the Defendant's own free will.

DANIEL N. ROSEN
United States Attorney

Date: ______________________

BY: ______________________
J. Parker Gochenour
Trial Attorney

Date: October 9, 2026

For Rebecca E. Kline
Assistant United States Attorney

Date: 10/9/26

LaMar Javis Burgess
Defendant

Date: 10/9/26

William Mauzy
Counsel for Defendant